STEWART and WHITEWRIGHT, Executors of T. Chambers, *v.* CHAMBERS and others.

A testator having a wife and two small children, and also four adult children by a former wife, after giving legacies to the latter, directed his executors to convert all the residue of his estate and invest it in stocks or on real security, so to remain until the death or marriage of his wife, and until the youngest child should become of full age. Out of *the interest and income,* they were to pay his wife *an annuity half yearly* so long as she remained sole, and to his two infant children *each an annual sum in half yearly payments,* varying according to their age from time to time. Each was to have £1000 on her marriage ; and when the youngest became of age and the widow's annuity ceased, the residue was to be divided equally between them. The will further provided in the mean time, that *all the surplus interest and income,* after paying the annuities, should be divided among the four adult children, *semi-annually.* The income of the residue of the estate was insufficient to pay the three annuities during ten years that the widow survived. After her death it was more than sufficient to pay the two infants' annuities.

*Held,* that the surplus sums then arising, must be applied to the discharge of the arrears of the three annuities which occurred prior to the widow's death, before any of them could be divided among the adult children.

Legacies for support and maintenance of a wife and children, otherwise unprovided for, do not abate with the general legacies.

The direction for a half yearly payment and distribution, was held on the general intent of the will, to be a regulation as to the time of payment to the wife and two minor children, and for a division after they were fully paid. And the testator's intent would be violated by a division of the surplus of any half year, leaving any portion of the annuities unpaid which fell due previously.

But the adults having received a surplus when there were no arrears, would not be required to refund, on the income subsequently becoming deficient to meet the current annuities.

The arrears to the widow became a debt due to her as they respectively accrued, which was a charge upon the income accruing after her death.

An annuity to one of the infants, which on a literal reading of the will was to terminate, on an event that might leave her unprovided for at fifteen, and which did occur when she was twenty ; held to continue thereafter in the same manner as her sister's was directed, upon a construction of other clauses in the will, and its general intent.

Legacies directed to be paid in London in sterling money, if paid to the parties here are to be paid at the par of exchange ; and if remitted, the executors are to purchase exchange on London for the amount in sterling.

January 20 ; Feb. 28, 1845.

THE bill was filed in September, 1843, by the surviving ex-

ecutors of Thomas Chambers, who died in the city of New York on the second day of April, 1829, for a construction of his last will and testament, and for directions in the final disposition of his property. The will was dated on the twenty-second day of February, 1829, and was as follows;

"I, Thomas Chambers of Lisburn in the county of Antrim, Ireland, now residing in the city of New York, merchant, do make and publish this my last will and testament in manner and form following, that is to say, *First*, I order and direct that all my just debts and funeral expenses be paid as soon after my decease as can conveniently be done.

" Item. I give and bequeath to my friend Alexander T. Stewart, of the city of New York, the sum of two hundred and sixty pounds British sterling money, to be by him distributed among certain persons in Ireland, at his discretion.

" Item. I give and bequeath to my daughter, Catharine McGinnis, the sum of fifty pounds British sterling money.

" Item. I give and bequeath to Elizabeth Chambers of Lisburn, aforesaid, the sum of fifty pounds British sterling money, but in case the said Elizabeth Chambers shall have departed this life previous to the time of my decease or within one year thereafter, without having received the said sum of fifty pounds, then and in either of those cases I give the said sum of fifty pounds to the said Catharine McGinnis.

" Item. I give and bequeath to my son Moses Chambers, the sum of four hundred dollars, lawful money of the United States of America.

" Item. I give and bequeath to my daughter Eliza Barry, the sum of five hundred dollars, lawful money of the United States of America.

" Item. I give and bequeath to my daughter Maria Chambers, the sum of twelve hundred and fifty dollars, lawful money of the United States of America.

" Item. I order and direct my executors hereinafter named, and the survivors and survivor of them and such of them as shall act for the time being, to collect all the moneys due and to grow due to me, or such part thereof as shall be found to be collectable. To sell and dispose of all my personal property, and convert the

same into cash : to sell and dispose in fee simple, absolutely of all my real estate, and give good and sufficient conveyances in the law for the same, and invest the proceeds of such collections and sales after deducting and paying all my just debts, the legacies above mentioned, and all reasonable and proper costs, charges and expenses, in stock of a permanent and productive nature, or place the same at interest on real security, so to remain until the death or marriage of my said wife, and until my youngest child shall arrive at the age of twenty-one years.

"Item. Out of the interest and income of my estate, I give and bequeath to my beloved wife Mary Chambers, the sum of seventy-five pounds British sterling money per annum, payable semi-annually in London, so long as she shall remain my widow.

"Item. Out of the interest and income of my estate, I give and bequeath to my daughter Isabella Harriet Chambers, the sum of forty pounds British sterling money per annum, payable semi-annually until she shall arrive at the age of fifteen years, and from that time until the death or marriage of my said wife, I give her fifty pounds of like money per annum, payable semi-annually, unless my said daughter Isabella Harriet shall sooner marry.

"Item. Out of the interest and income of my said estate, I give and bequeath to my youngest daughter Mary Grace Chambers, the sum of twenty pounds British sterling money per annum, payable semi-annually, until she shall arrive at the age of ten years, and from that time until she shall arrive at the age of fifteen years I give her the sum of forty pounds of like money per annum, payable semi-annually, and from the last mentioned time until she arrives at the age of twenty-one years, and until the death or marriage of my said wife, unless my said daughter Mary Grace shall sooner marry, I give her the sum of fifty pounds of like money per annum, payable semi-annually.

"Item. In case my said daughter Isabella Harriet Chambers shall marry previous to the time of the final distribution of my residuary estate as hereinafter mentioned, I order and direct my executors to advance to her out of the principal thereof the sum of one thousand pounds British sterling money on the day of her marriage or as soon thereafter as she shall arrive at the age of twenty-one years, when her said annuity shall cease.

"Item. In case my said daughter Mary Grace Chambers shall marry previous to the time of the said final distribution of my residuary estate, as hereinafter mentioned, I order and direct my executors to advance to her out of the principal thereof, the sum of one thousand pounds British sterling money on the day of her marriage, or as soon thereafter as she shall arrive at the age of twenty-one years, when her said annuity shall cease.

"Item. Until my youngest child shall arrive at the age of twenty-one years, and until the death or marriage of my said wife, I order and direct that all the surplus interest and income of my estate, after paying the legacies and annuities above mentioned be divided between my son Moses Chambers and my said daughters Catharine McGinnis, Eliza Barry and Maria Chambers equally, and in case any one or more of said children Moses, Catharine, Eliza and Maria shall die leaving lawful issue living at the time of his, her or their death, such issue if one solely, if more than one jointly and equally, is to take the share or shares of such surplus income which his, her or their parent or parents would have taken if living, and in case any one or more of them shall die without leaving lawful issue then living, the share or shares of such so dying shall go to and be divided among the survivors of them and the issue of such of them as shall die leaving lawful issue then living, such issue taking the parent's share as aforesaid, such division to be made semi-annually.

"Item. I hereby appoint my friend, William P. Manger, of London, in the kingdom of Great Britain, accountant, guardian of my said daughters, Isabella Harriet Chambers and Mary Grace Chambers, during their minority, and direct their said annuities to be paid to him in London for their use; and for his services therein, I hereby allow him to charge the sum of two hundred pounds, British sterling money, payable and to be paid out of my residuary estate, at the time of the division and before the distribution thereof.

"Item. After my youngest child shall have arrived at the age of twenty-one years, and after my said wife shall marry or depart this life, I give, devise and bequeath all the rest, residue and remainder of my said estate to my said daughters, Isabella Harriet Chambers and Mary Grace Chambers, equally, share and

share alike, and in case either of them shall then have departed this life leaving lawful issue then living, such issue, if one, solely, if more than one, jointly and equally, is to take the share of his, her or their parent or parents. In case either of them shall then have deceased without leaving lawful issue then living, then, and in that case, the survivor of them, or the issue of one of them that shall then have deceased leaving lawful issue then living, shall take and receive, in addition to her one equal half part thereof, the sum of eight thousand dollars, lawful money of the United States of America, of the share of such one as shall then have died without leaving lawful issue then living, the residue of the share of the one so dying without leaving lawful issue then living, to be equally divided between my said son Moses and my said daughters, Catharine, Eliza and Maria, or the survivors of them, and the issue of such of them as shall then have deceased leaving lawful issue then living, such issue, if one, solely, if more than one, jointly, to take the share of his, her or their parent or parents as if then living. And in case both my said daughters, Isabella Harriet and Mary Grace Chambers, shall then have deceased and neither of them shall have left lawful issue then living, then, and in that case, I give the said rest, residue and remainder of my estate to my said children Moses, Catharine, Eliza and Maria, and the survivors of them, and the issue of such of them as shall then have deceased leaving lawful issue then living, such issue, if one, solely, if more than one, jointly, to take the share of his, her or their parent or parents as if then living.

"And lastly, I do hereby nominate, constitute and appoint my friends, Alexander T. Stewart, William Whitewright, and John Hall, all merchants, residing in the city of New York, executors of this my will and testament, hereby authorizing and empowering them, and the survivors and survivor of them, and such of them as shall act for the time being to compromise and compound with all my debtors, and submit to arbitration all disputes and controversies that shall arise in the settlement of my estate. And hereby revoking all former and other wills and testaments by me made, I declare this and this only to be my last will and testament."

Stewart v. Chambers.

After the signature and attestation clause, was added a paragraph, signed by the testator and which with the will, was attested by three witnesses, in these words, viz :

"Item. For the purpose of having my two daughters, Isabella Harriet Chambers and Mary Grace Chambers, better educated, I will and bequeath to each the sum of twenty pounds, British sterling money, payable semi-annually, in addition to the aforesaid annuities, until each of them arrive at the age of twenty years."

On the 8th of March, 1829, the testator added a codicil to his will, revoking all but five dollars of the legacy which he had given to Moses Chambers.

The testator left surviving, his wife, and two children who were her issue, Isabella aged about ten years, and Mary Grace about one year old. He also left one son and three daughters, the issue of a former wife, to whom were bequeathed legacies by the will ; and all of whom were adults.

The executors proceeded at once to convert the estate into money and securities and pay off the debts and legacies, which was accomplished by the 21st of December, 1830, at which time the whole residue of the estate was found to amount to $12,020 39. The income from this residue was insufficient to pay the three annuities charged upon it by the will in favor of Mrs. Chambers and her two daughters.

Mrs. Chambers died on the 23d day of September, 1839, at which date the unpaid arrears of her annuity were $968 95. She left a will by which she bequeathed all her right to the annuity and its arrears to her two daughters. At the same date there was in arrear to Isabella, of the full annuities given to her by her father, $834 02; and to Grace, $543 28.

After the death of the widow, there was a surplus of income every six months, after paying the accruing annuities to the two daughters. Upon this the question arose, whether these surplus sums should be applied to paying the arrears of former years, due to the widow and Isabella and Mary Grace respectively ; or should be divided as they arose half yearly, between the other children under the clause in the will for dividing the surplus income.

Previous to this suit, Mrs. McGinnis died leaving her husband and five infant children surviving; Mrs. Barry also died leaving her husband and two infant children surviving; Mary Chambers died intestate and without issue; and Moses Chambers died intestate and without issue, leaving a widow.

The guardian named in the will never acted in that capacity; but Isabella and Grace lived in New York with their mother until her death; after which event William Wright, her executor, became their guardian and provided for them.

Some other questions were stated in the bill, as having arisen under the will of Thomas Chambers. Annexed to the bill were the accounts of the executors, showing their whole receipts and payments on account of the income, and of the annuities to Mrs. Chambers and her two daughters.

*W. Mitchell,* for the complainants, made the following points.

I. Neither Mrs. Chambers' executor nor the children are entitled to have the arrears of the annuities caused by the former deficiency of the income, to be made up from the present surplus beyond the annuities; that surplus by the will goes to the other children of the testator. (*Scott* v. *Salmond,* 1 M. & K. 363; 2 Williams on Exec. 837 to 841; *Beeston* v. *Booth,* 4 Madd. 161; *Page* v. *Leapingwell,* 18 Ves. 463.)

II. The annuity of £50 to Isabella H. Chambers ceased on the death of her mother, and the additional annuity of £20 ceased when she was twenty years of age.

III. The annuities being payable in British sterling and to a guardian in London, and to be paid there, if paid in full, are to be paid with so much of the federal currency as would here be necessary to place the amount of the annuities in London at the respective times of payment, according to the rate of exchange at such times.

IV. Mr. Manger not having acted as guardian is entitled to no compensation.

*G. F. Allen,* for the defendants Barry, and the defendants McGinnis, made the following points.

I. Isabella and Mary Grace have no claim whatever upon the surplus income accruing from the estate since the death of Mrs. Chambers; because,

1. That surplus is specifically given by the will to Moses, Catharine, Eliza and Maria. The annuities are given " out of the income," and are to be paid " semi-annually ;" all the " surplus, interest and income" is to be divided among Moses, Catharine, Eliza and Maria, and such division to be made " semi-annually." The *surplus income* is to be *divided semi-annually*, *i. e.* the semi-annual surplus is to be divided.

2. The annuities to Isabella and Mary Grace are not given generally, and then made payable out of the income of the estate ; but they are specific gifts of portions of that income : " *out of the interest and income* of my estate, I give" &c. Neither are they charges upon the entire aggregate income of the estate, but are gifts out of each year's income of a specific portion thereof. The testator gives " out of the interest and income," a certain sum " per annum," payable " semi-annually." He then directs the " surplus income" to be divided among Moses, &c. Each semi-annual sum is a legacy out of a specific fund, viz: the income of the corresponding half-year, and when that fund fails, the legacy fails with it.

3. The testator contemplated a semi-annual distribution of the income of his estate, and the will makes it the duty of the executors to make a final and complete distribution of the income every half year.

4. The principle contended for by Isabella and Mary Grace would make Moses, &c., liable to refund, had they at any time received any surplus income, and the income of any subsequent year proved insufficient to pay the yearly sum given thereout.

5. Such a claim could not be sustained unless most express provision for it was found in the instrument. (*Scott* v. *Salmond*, 1 Mylne & Keen, 363; S. C. 1 Cooper Sel. Ca. 46.) The present will contains no such provision, but its whole tenor is to the contrary.

II. The executor of Mary Chambers has no claims upon the surplus income which has accrued since her decease, for the reasons under the first point and also because the testator never

intended to give her any interest in any income which should accrue from his estate after her decease.

III. The annuities to Isabella and Mary Grace abated in the lifetime of Mrs. Chambers, and cannot be raised above the abated rate.

IV. Isabella's annuity ceased on the death of her mother, viz : 23d September, 1839.

V. The sterling money must be reduced to dollars at the legal par, without any allowance for exchange. (*Scofield* v. *Day*, 2 J. R. 102.)

VI. One-half of the surplus income should be divided equally among the children of Mrs. Barry, and the other half among the children of Mrs. McGinnis.

The counsel also referred to *Beeston* v. *Booth*, and *Page* v. *Leapingwell*, before cited, and to *Dyose* v. *Dyose*, 1 P. Will. 305.

*C. O'Conor*, for Isabella H. and Mary Grace Chambers, and for Mrs. Chambers executor, made the following points :

I. The primary, general and leading intent of the testator was to secure to his widow and her children an ample support out of the income, and to secure to the latter the whole capital, as soon as they should attain a proper condition in life to enjoy it. The gifts over to the elder children are trivial or remote. The gift to the elder children of a surplus of income, possibly to arise during an indefinite interval, is a disposition merely incidental and secondary, which should not be permitted to interfere in any degree with the primary intent.

1. No particular portion of income is given to the elder children, nor any certain term allowed for the accruer of their *chance.*

2. It is clear that the testator only designed for their benefit, such accidental surplus as might perchance arise, after affording what he deemed a complete and adequate support to his widow and her children.

3. The only evidence of care or favor in respect to them on this head, is contained in the provision for half-yearly distribution. This was a formula naturally adopted from imitation

of the precedent direction so to pay the other children.   The testator did not apprehend depreciation in later years.

4. The repeated use of the word "*surplus*" in reference to the portion of income allotted to the elder children ; as also the direction to "*pay*" the annuities, and to "*divide*" the surplus income, are circumstances in support of the claim of the younger children.

The cases cited under this point, were *Lewin* v. *Lewin*, 2 Ves. Sen. 415 ; *Farmer* v. *Mills*, 4 Russ. 86 ; 2 Williams on Exec. 837.

II. The arrears of the widow's annuity should be paid to her administrator, and the arrears of the annuities of the younger children should also be paid out of the surplus of the present income, before any distribution to the elder children.

III. Isabella H. Chambers is entitled to receive her annuity of £50 until she shall become entitled to the £1000, or to her whole share of the capital.   (*Sherratt* v. *Bentley*, 2 M. & K. 149.)

THE ASSISTANT VICE-CHANCELLOR.—No one can read this will without being satisfied that the great and principal intent of the testator, was to provide for the support of his wife, and the maintenance and education of his two infant children.   His other children appear to have been adults, and are with one exception, provided with legacies, which have been paid in full.

The gift under which their representatives now claim, is of the surplus interest and income of the estate, *after paying the legacies and annuities* previously bestowed.   Those annuities being for support and maintenance, it would be doing violence to the plain intent of the testator, to declare that there was a surplus income to be divided, as long as any portion of the annuities remained unpaid.   This was my first impression of the case, and subsequent reflection has confirmed it.   The argument against making good from the surplus of later years, the arrears of the annuities which accrued in the earlier stage of the administration, rests wholly upon the fact that they were payable out of the interest and income, and were to be paid semi-annually.

In truth, it stands upon the latter provision, because if there were a mere direction to pay out of the income, certain sums,

without reference to time; the whole of those sums would ultimately be payable, if the income ever became adequate.

Then as to the effect of the clause that the annuities shall be paid half yearly. It is clearly a direction to the trustees regulating the time of payment, so as to provide for the seasonable support of the wife and infant children. It is not a direction that at the end of every six months, they shall strike a balance, and dispose of the income then received, without reference to the past or the future; if nothing had been collected, then to pay nothing, for the preceding six months annuities, even if in the ensuing six months the income should come in to double their amount. This cannot be a reasonable construction of the will.

Yet it is the construction for which the representatives of the elder children contend. They insist that the trustees were to apply the income, divide it and close it finally and forever, at the end of each six months. If at that time, there were less than enough to pay the annuities, the wife and young children were to receive what there was, in full for that six months, and lose the residue. And if at the end of any half year, there were a surplus after paying the annuities, that surplus was to be divided at once among the residuary legatees of the same under the will; although the annuitants during the year next previous had not received half of their annuities.

These inequalities in the half yearly income would necessarily be frequent. If the estate stood in bank or insurance stocks, some casuality in business might prevent a dividend for a year. If invested on mortgage, the death of the mortgagor, his bankruptcy, or some other event, might delay the payment of interest for a considerable period.

So in converting into money and investing an estate consisting of bills receivable or other debts due, there would inevitably be great and unequal delays in realizing the same and putting them out upon securities producing a stated income.

The construction claimed, would throw the burthen of all these contingencies upon the widow and infant children, inflicting upon them a heavy loss and a straitened maintenance; and the legatees of the surplus would ultimately become the gainers to the amount of the loss thus sustained by the annuitants.

The will does not give the annuities out of *each year's specific income*, as was urged by the counsel claiming the surplus. They are given out of the whole interest and income of the estate; and the residuary legatees are to have nothing until after the payment of all the annuities.

There would be no surplus income to divide, according to the terms of the will, until all the annuities were paid; and payment of all, is only accomplished by full payment.

This obviates the objection raised, that under the construction claimed by the two infants, the legatees of the surplus would be liable to refund what they had received in a productive half year, to make up the deficiency of some less fortunate term of six months.

The trustees could not divide any surplus on this construction, until all the annuities were paid in full. When they were thus paid the will became imperative that the trustees should divide the surplus, and whatever the legatees received on such a distribution, would be their own, rightfully paid, and not revocable. If in the ensuing six months, there should be a deficiency, the annuitants would necessarily wait until it could be made up from the future income.

The established principles of construction, it appears to me, sustain the view which I have taken upon the intent of the testator.   A residuary legatee cannot call upon a general legatee to abate.   (2 Will. on Exec. 837 ; 1 Roper on Leg. 355.),

And annuities, given for the maintenance of a wife and children who are otherwise unprovided, which is precisely this case, are held not to abate in proportion with the general legacies. (*Lewin* v. *Lewin*, 2 Ves. sen. 415;) a decision which goes far beyond what is requisite to restore the arrears to these two children.

In *Beeston* v. *Booth*, (4 Madd. 161, 170,) the Vice-Chancellor speaking of legacies similar to those of the residue here, says, "they are expressly given out of such uncertain residue or surplus as shall remain after providing for the two first sets of legacies, and the intention of the testator that they are to be payable only in case there be a surplus, is too plain to admit of question."

And in *Farmer* v. *Mills*, (4 Russell, 86,) the Master of the Rolls gave his opinion, that where there was a direction to pay annuities out of investments, and residuary bequests were then given, and the estate fell short ; the arrears of annuities were to be made up on some of the annuitants dying, before the residuary legatees would be entitled.

Both of these cases, together with *Page* v. *Leapingwell*, (18 Ves. 463,) were cited by the legatees of the surplus, but I do not think the cases sustain their position.

The decision of Vice-Chancellor Shadwell in *Boyd* v. *Buckle*, (10 Simons, 595,) is a strong authority for the payment of these arrears. In that case, the testator by his will, after reciting that he had settled on his wife for her life at their marriage, the yearly rent of a leasehold estate and the dividends of £4000 of stock ; that the leasehold estate on her surviving him would form a material part of her income ; and that the lease under which he held the same might expire in her lifetime ; directed his trustees in that event, *out of and from the dividends and interest arising from a sufficient part of his personal estate, at their discretion*, to pay to his wife, so much per annum as would be equivalent to the rent so lost by such lease having expired. He also gave to her an immediate legacy of £500 ; and gave to his trustees certain stocks, of which the interest was to be paid to her. After giving some pecuniary legacies to others, he bequeathed to the trustees all his remaining personal estate, to be invested, and to accumulate the income until the lease expired ; and then upon the lease expiring, during the residue of his wife's life, to pay to her the annual income of the investments and of the accumulations ; and after her death the residuary fund and accumulations, if any, were to go the testator's grandchildren who were living at his decease, equally. The lease expired in the lifetime of the widow, about three years after the testator's death ; and the annual income of the residuary fund including therein the accumulation, was not sufficient to make good to her the loss of income occasioned by the termination of the lease. It was held that she was entitled to have the deficiency of her income made good out of the capital of the residuary fund.

The case of *Dyose* v. *Dyose*, (1 P. Will. 305,) decided by:

Lord Cowper, and cited by the legatees of the surplus, was disapproved by Lord Thurlow in *Fonnereau* v. *Poynts*, (1 Bro. C. C. 478,) and by Sir William Grant, in *Page* v. *Leapingwell*, (18 Ves. 466.)

The legatees relied much upon *Scott* v. *Salmond*, 1 M. & Keen, 363, decided by Sir John Leach, and affirmed by Lord Brougham. But it will be seen that the judgment of the latter, was placed upon the ground that the testator set out with a knowledge that there was to be a deficiency in the rents of the real estate paying the two annuities charged on those rents, and then gave over the surplus of the rents that there would be whenever the one annuitant died, " after payment of the annuities for the time being in existence payable out of the rents," to a third person. And by the will he called in aid his personal estate, which he erroneously supposed was ample, to make good both of the specific annuities. In that case the rents had never proved inadequate to pay all that the testator intended that they should pay.

My conclusion is that the trustees must make good from the surplus which has accrued since the death of Mrs. Chambers, the whole amount of the unpaid annuities to Isabella and Grace Chambers.

A distinction was drawn between these arrears, and the unpaid annuity of Mrs. Chambers, on the ground that the testator never intended to give her any interest in any income which should accrue after her decease.

This is probably true, as to any actual intention present in his mind, because he evidently supposed his estate was much larger than it proved to be. At the same time, I am persuaded from the language of the will, that if he had anticipated the existing state of things, he would have imperatively enjoined such payment.

What does the will declare when applied to that state of things?

The testator's primary and great intent was a suitable provision for his wife and two children, as I have already stated. To that end, he gave these annuities payable half-yearly. He intended to make a very ample provision for their payment, because he charged them upon the whole income of all his residu-

ary estate. The clause for the payment of $8000 out of the one-half of this residue on the death of either of these two children without issue, shows that the testator supposed the whole residue would produce an income considerably exceeding the aggregate annuities.

He did not direct a sum or sums sufficient to produce these precise incomes, to be invested, and then give such incomes to the wife and children; thereby limiting them to the income of such sums, whether they continued to produce the same revenue or not.

But the testator intended to secure to each of them, a fixed yearly sum; absolutely, and without reference to any contingency, or any particular investment or fund which was to produce it.

It is the bequest of an annuity, and as such, vested in Mrs. Chambers a right to receive it every six months, and at the end of each six months the amount then payable became a debt due to her, to be liquidated out of the future income, if it should ever prove adequate for that purpose.

The cases of *Davies* v. *Wattier*, 1 Sim. & St. 463; *May* v. *Bennett*, 1 Russ. 370; and *Arundell* v. *Arundell*, 1 Mylne & Keen, 316, illustrated the extent to which equity will go to maintain in their integrity, provisions of this description.

I think I shall best effectuate the whole intention of the testator as it is derived from this will, by declaring that the entire annuity to his widow, as well as those to his two infant children, shall be paid in full, without abatement, before any surplus income can be distributed among the residuary legatees of such surplus.(*a*)

---

(*a*) In *Foster* v. *Smith*, 2 You. & C. New Cases, 193, where trustees were directed to pay out of the rents and profits of freehold and leasehold estates, an annuity of £200 to the widow during her life, in equal quarterly payments; the income being insufficient for the payment of the annuity. Sir Knight Bruce, V. C., held that the arrears due at the widow's death were chargeable on the *corpus* of the estates. See also *Cassamajor* v. *Pearson*, 8 Cl. & Fin. 69, where on a different state of facts from those in the text, it was held that the arrears in any given year, were not to be made up out of the surplus of any succeeding years.

Isabella H. Chambers claims that her annuity of £50 is to be paid to her until her marriage, or until her sister Grace becomes of full age. The legatees of the surplus income insist that this annuity ceased on the death of Mrs. Chambers.

The bequest is singularly expressed. Isabella was about ten years old at the death of her father. The will first gives her an annuity of £40 until she shall arrive at the age of fifteen, and from that time until the death or marriage of her mother, it gives to her £50 a year unless she shall sooner marry.

Thus on this clause alone, it is apparent that if the mother had married or died before Isabella became fifteen, the annuity of £50 would never have come into existence, and she would have been left utterly destitute at that tender age. The will gave her no part of the capital until her marriage ; and unless she married, it gave to her no part of the capital absolutely, so that she could sell or dispose of it in anticipation of the time of its distribution. She might never have a proposal of marriage. So upon the construction claimed against her, we have the extraordinary spectacle of a father, able and apparently anxious, to make a comfortable provision for his young daughter first by a suitable income from time to time, and finally by giving to her half of his estate, in case she survived till the time fixed for its division ; yet making a will which, on two contingencies that were both in his mind, and were both likely to occur, would leave that daughter at the age of fifteen without a shilling for her support, and deprived of all benefit from her father's estate for the ensuing fifteen years, unless she could obtain a husband in the mean time and thereby entitle herself to the £1000 provided to be paid to her on her marriage.

It is impossible to believe that this was the actual intention of the testator. Still if the language of the will, when construed upon all its parts, expresses that intention, it must needs be so declared and enforced.

There is another singularity upon this construction, which is that the testator should have placed the cessation of his daughter's annuity upon two such events, as the marriage and death of his widow. He seems to have thought that his wife might marry again, and he cut off her annuity upon her so doing. He could

scarcely have failed to perceive that such second marriage, while it deprived her of the means, would also diminish her disposition, to aid in the support of her children. And her death would necessarily cut off all aid to her children, if her annuity should continue till that time.

We are led to expect in his will some guide to his intention, farther than that contained in the bequest upon which I have commented.

In the general scope of the will, there is no indication of any design on the part of the testator to do less for Isabella, than he does for his youngest daughter Grace. Their annuities are the same during the corresponding periods of their youth; the marriage gift is the same to each; and they are to share equally in the ultimate distribution of the estate. Every clause in the will indicates pure and entire equality between them, unless it be disturbed by the construction asked by the surplus legatees.

Now the provisions as to Grace are these. She is to have £20 annually till she is ten years old, £40 from thence till she becomes fifteen, and £50 from thence till she becomes twenty-one, and until the death or marriage of the widow, unless Grace should sooner marry.

Thus a sure income was provided for her till her marriage, or till the time of distribution. Following this in the will, is the provision for the marriage of Isabella; which is, that in case she marries previous to the time of the final distribution, the executors are to advance to her out of the capital £1000 on the day of her marriage, or as soon thereafter as she shall arrive at the age of twenty-one years, *when her said annuity shall cease.* This clause shows that there was no intention to have the annuity cease upon any contingency connected merely with the death or marriage of Mrs. Chambers.

The provision for the marriage of Grace, succeeds that for Isabella, and is in the same words.

The codicil furnishes further and conclusive evidence that the testator had no thought of cutting off Isabella's income at fifteen, in case his wife died or married before she attained that age. It declares that for the purpose of having his two daughters, Isabella and Grace *better educated,* he wills and bequeaths to each.

£20, payable semi-annually, *in addition to the aforesaid annuities*, until each of them arrives at the age of twenty years.

The codicil declares an intention that the annuity of £50 before given to Isabella, should not be determinate on the death or marriage of the wife of the testator. The only other events with which it was connected in the will, were the payment of her marriage portion and the division of the estate.

I think the true construction of the will is this:

Isabella, exclusive of the £20 in the codicil, was to have £40 annually till she became fifteen; and £50 annually from thence until the division of the estate. But if she married before that time, then upon her marriage if she were of full age, or on her becoming twenty-one years of age if she married while a minor, she should receive £1000 from the executors, and thereupon her annuity should cease.

The testator as a British subject, directing his annuities to be paid in London, doubtless had in view the English rate of interest; and the interest at five per cent. on £1000, would continue Isabella's income after her marriage, without alteration, until the time of the final division.

Probably there was an accidental omission of the words "until my youngest daughter Grace shall arrive at the age of twenty-one years and," before the words "until the death or marriage of my said wife," in the paragraph of the will which grants the annuity to Isabella. These words would make it precisely like the subsequent gift of the like annuity to Grace. The intention is sufficiently apparent from the residue of the will, to enable the court to uphold the legacy and carry out the design of the testator.

I refer to *Sherratt* v. *Bentley*, (2 M. & Keen, 149,) for an apt instance of the rejection of words used in a will, which were incompatible with the general intention collected from the whole will.

In my judgment, Isabella Chambers is entitled to receive her annuity until her marriage, or until the final division of the estate, if she shall remain unmarried till that time.

The annuities are to be paid in London in British sterling money. Payment here for legatees there, in the currency of the

United States, will not be a compliance with the testator's direction. It is not like the case of a creditor suing in our courts for the recovery of a debt. In those cases the money recovered becomes payable here. Here the trustees are asking the direction of the court in the discharge of their trust; and they can discharge this part of it, only by paying the sums directed, and in the manner directed, by the will. In order to make such payment, they must apply so much of the fund as is requisite to purchase exchange on London for the amount there payable. If payment is to be made to parties here, it must be in the pound sterling at par.

Decree accordingly, with costs to the respective parties out of the fund.